IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                              Case No. 19-10093-JWB

IVRAN L. PAYNE,

        Defendant.

**MEMORANDUM AND ORDER**

This matter came before the court on December 17, 2019, for an evidentiary hearing on Defendant's motion to suppress (Doc. 25.) The motion has been fully briefed and the court is prepared to rule. (Doc. 26.) For the reasons stated herein, Defendant's motion is DENIED.

**I. Facts**

On March 9, 2019, Wichita Police Department received a call regarding a loud party at the Hawthorne Suites in Wichita, Kansas. Officer Chad Ditch was on duty and dispatched to the call. He arrived at the hotel at approximately 12:53 a.m. On that evening, Ditch was partnered with Officers Wine and Dau. They contacted the manager about the call. While speaking with the manager, she informed them that there was also a single gunshot heard within the last hour. She said the gunshot was near room 413. The officers first investigated the room that was the subject of the party call. Ditch testified that they handled the party call first because the report of the single gunshot was not as urgent at the time. Ditch further explained that this hotel has a history of numerous incidents, some of which include reports of gunshots. The officers were not overly concerned about the gunshot because it was a single gunshot and there had not been any calls to 911 as a result of the gunshot. After speaking with persons in the room where the party was going

on, the officers proceeded to room 413. The officers approached the outside of the room and could see that the curtains to the sliding glass door were open.[1] Ditch saw a black male who was sitting in a wheelchair and slumped over. The black male was later identified as Defendant. Defendant's forehead was resting against the window. The officers shined their flashlights inside of the room and did not see anyone else inside. The officers banged on the glass door several times and announced that they were police officers. Defendant did not respond but remained slumped against the glass door. Ditch then observed that there was blood on the left leg of Defendant's pants. Ditch pointed out the blood to Wine who also saw that there was a gun laying between Defendant's feet. Ditch testified that he then believed that Defendant had attempted suicide and was concerned that Defendant needed medical attention.

The officers went to the main door to the room and made entry by force. All three officers quickly swept the room to determine if Defendant was alone. There were no other individuals inside the room. Defendant remained slumped against the glass door during the entry and search. After securing the room, Ditch shook Defendant and tried to wake him. Defendant started to moan. Ditch leaned him back to try to determine if he had any wounds that needed medical attention. Ditch cleared the gun out of reach from Defendant. Ditch asked Defendant what happened and if he had shot himself. Defendant was mumbling incoherent responses and continuing to slump over. Defendant was trying to respond but his voice was slurred. Ditch believed that Defendant needed medical attention because he was having difficulty responding and he might have been shot. The officers observed a bullet hole in Defendant's pant leg. Ditch then pulled up Defendant's pant leg and saw that Defendant had a graze to his left calf. Emergency medical services ("EMS") were called. Ditch believed that Defendant had shot himself. Ditch looked for other injuries. A spent

---

[1] The officers' approach of the room and subsequent entry was preserved on Ditch's Axon video. The facts are taken from the video and Ditch's testimony.

casing was located in the area of Defendant's groin. Based on a review of the gun and the shell casing, Ditch believed that the spent casing came from the gun that was observed by Defendant's feet.

Defendant was then moved to the bed to look for other injuries and so that EMS could better treat Defendant when they arrived. At some point, Ditch was informed that Defendant was paralyzed from his waist down. Defendant also informed officers that he had a fanny pack that had a gun inside. Ditch located the fanny pack but it did not have a gun. While in the room, Ditch and the officers observed two baggies in plain view on a television stand. The stand was within an arm's reach of Defendant's location by the sliding glass door. Based on Ditch's experience and what he could see through the plastic baggies, Ditch believed that one bag contained cocaine and that the other contained ecstasy. The bags were in the open and the officers did not have to move any items to observe the bags.

Defendant then asked Ditch to retrieve his cigarettes that were in the pocket of a pair of pants. When he reached into the pocket to retrieve the cigarettes, Ditch could feel another baggie in the coin pocket of the pants. Based on his experience, Ditch believed that the coin pocket contained another baggie of drugs. Ditch removed the second baggie and it contained cocaine. When EMS arrived, Defendant refused medical services.

Defendant has been charged with felon in possession of a firearm, drug abuser in possession of a firearm, and two counts of simple possession. (Doc. 1.) Defendant now moves to suppress the firearm and drugs on the basis that the officers entered his hotel room in violation of his Fourth Amendment rights.

**II. Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Although the government initially disputed Defendant's standing to object to the officers' entry to his room, the government stated during the hearing that it does not contest Defendant's standing under the Fourth Amendment. Therefore, the court will proceed to the question of whether the officers' entry and seizure of the gun and drugs were permissible under the Fourth Amendment.

<u>Exigent Circumstances.</u>  The government argues that the officers' entry was permissible due to exigent circumstances. Absent an exception, a warrantless entry into a home is unconstitutional. *United States v. Mongold*, 528 F. App'x 944, 948 (10th Cir. 2013) (citing *Kentucky v. King*, 563 U.S. 452, 460 (2011)). An exception to the warrant requirement includes "entering a home to aid an injured individual in an emergency." *Id.* (citing *King*, 563 U.S. at 460).

For the exigent circumstances exception to apply, 1) the officers must "have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search [must be] reasonable." *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006). Based on the facts in this case, the court finds that the officers had a reasonable basis to believe that there was an immediate need to protect the safety of Defendant. The officers' knowledge included a report that a gun had been fired, Defendant was observed slumped against the glass door, Defendant was not responding to the officers banging on the glass, there was a gun on the floor by Defendant's feet, and there was blood on Defendant's

pants. Based on these circumstances, it was reasonable for the officers to believe that Defendant may have been shot and that he was in need of medical assistance. The court further finds that the officers' entry into the room was reasonable. The officers entered the hotel room and did a quick sweep of the room to determine whether there were any other occupants in the room. They then attended to Defendant. The court finds that the entry in the room and sweep were reasonable.

Defendant argues that the emergency aid exception to the Fourth Amendment's warrant requirement "should not exist." (Doc. 25 at 2.) As Defendant admits, his argument is foreclosed by Supreme Court precedent cited herein. Moreover, Defendant offers no reasonable explanation as to why this exception, to protect lives or the safety of officers and the community, should be set aside.

Defendant's motion only challenges the entry to the room. Defendant does not raise the argument that the gun and drugs were unlawfully seized. (Doc. 25.) Nevertheless, the court will address the proprietary of the seizure of the evidence. Based on the facts, the court finds that the items seized were either in plain view or seized after a consent to search. Items discovered during "a truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987). Under the plain view doctrine, "a law enforcement officer [may] seize evidence of a crime, without violating the Fourth Amendment, if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent ... and (3) the officer had a lawful right of access to the object." *United States v. Angelos*, 433 F.3d 738, 747 (10th Cir. 2006) (quotations omitted). The court has already determined that the officers were lawfully in a position to view the gun and the two baggies of drugs. The officers also had a lawful

5

right of access to those items as they were out in the open and there was nothing impeding the view of those items. *United States v. Thomas*, 372 F.3d 1173, 1179 (10th Cir. 2004). With respect to the incriminating nature, Ditch testified that, based on his experience, those baggies contained cocaine and ecstasy. Those items are illegal. The gun's incriminating character was also immediately apparent as it is unlawful for a drug abuser to possess a weapon.[2]

With respect to the second baggie of cocaine, the court finds that Defendant consented to the search of the pants. A search that is conducted after receiving consent constitutes an exception to the Fourth Amendment's requirements. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The consent must be voluntary. To establish voluntariness, the government must "(1) 'proffer clear and positive testimony that consent was unequivocal and specific and intelligently given,' and (2) the officers must have used no 'implied or express duress or coercion.'" *United States v. Sanchez*, 608 F.3d 685, 690 (10th Cir. 2010) (quoting *United States v. Taverna*, 348 F.3d 873, 878 (10th Cir. 2003)).

Based on the testimony, Ditch searched the pants after Defendant asked him to get his cigarettes out of the pocket of the pants. Defendant requested the search and there is no evidence that this request was anything but voluntary. Upon searching the pocket for the cigarettes, Ditch felt a baggie in the small coin pocket. Based on his experience, Ditch believed that the baggie contained drugs. Based on the circumstances, including the fact that there were two other baggies of drugs in the room, Ditch's belief was reasonable. These facts provided Ditch with probable cause to search in the coin pocket of the pants and subsequently seize the baggie after determining it was cocaine.

---

[2] Based on the indictment, the court also presumes that the government has evidence that Defendant is a felon. Ditch, however, did not testify about Defendant's status as a felon.

In sum, the court finds the entry into the hotel room and the seizure of the guns and drugs were reasonable under the Fourth Amendment.

IT IS THEREFORE ORDERED this 19th day of December 2019, that Defendant's Motion to Suppress (Doc. 25) is DENIED.

___s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE